## McKnight, et al. v. Broadway and Fourth Avenue Realty Company.

(Decided June 5, 1925.)

### Appeal from Jefferson Crcuit Court (Chancery Branch, First Division).

1. Landlord and Tenant—Lessors Held to have Waived Strict Compliance with Lease.—Where 99-year lease, executed in 1912, required lessee to insure buildings and deposit indorsed policies with trust company, which was not done, but not complained of until 1923, lessor held to have waived strict compliance.

2. Landlord and Tenant—Failure of Lessee to Comply with Terms of Lease in Reliance on Agreement with Lessor Held Not to Work Forfeiture.—Where 99-year lease provided for construction of permanent building in certain year and maintenance of temporary building in meantime, failure of lessee to repair temporary building after fire, pursuant to agreement with three of four lessors, held not ground for forfeiture.

JOHN BRYCE BASKIN and HASWELL & LUKINS for appellants.

BURNETT, BATSON & CARY and FRED FORCHT for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming.

On June 1, 1912, appellants' father and predecessor in title, leased to appellee for 99 years a lot on the northwest corner of Broadway and Fourth avenue in Louisville. The lease obligated appellee: (1) To pay rentals, ranging from $12,000.00 to $18,000.00 per annum, plus all taxes, assessments, and other charges against the property; (2) to construct on the lot, prior to December 31, 1912, a temporary building, or buildings, to cost not less than $25,000.00; (3) to supplant same with a permanent building, at a cost of not less than $400,000.00 to be begun on January 1, 1923, and completed within two years thereafter; (4) to keep all buildings insured against fire, lightning and wind, for 80 per cent of their value, to endorse all such policies to and deposit same with a named trust company, which was to collect and hold any proceeds payable thereunder and to expend same at the direction of appellee in rebuilding or repairing the building destroyed or damaged, "Said improvements shall be at least equal in value, size, character, and height to the building or improvements which they

replace;'' and, (5) to deposit with the trustee securities to be approved by the lessor, and worth not less than $50,000.00.

The lessors are given a lien upon the leasehold, any improvements erected thereon, and all appurtenances belonging thereto, and upon the proceeds of any insurance derived therefrom, to secure the payment of rentals, and are also given a lien upon the deposit of securities ''to secure the payment of all rents due, or to become due, and to secure the performance of all the covenants of this lease up to the time that the permanent building, or buildings hereinafter referred to are erected, free of lien and encumbrance.''

It is also stipulated that: ''In the event that the building shall be destroyed or damaged by fire, or otherwise, and shall not be repaired in the manner provided in this lease within 12 months from the date of the collection of the insurance due upon such destruction or damage, all money received by the said trust company, or its successors, as insurance upon said buildings, shall be paid to the lessors, their heirs, legatees, devisees, personal representatives, and assigns, as liquidated damages for the breach of the covenants of this lease in regard to rebuilding and repairing the improvements on the leased premises.''

Within the time provided in the lease, the lessee constructed a temporary building upon the lot, at a cost of more than $100,000.00, and the time for beginning the construction of the permanent building was subsequently extended from January 1, 1923 to January 1, 1929, by agreement of the parties. Approved securities in the sum of $50,000.00 were deposited with the trustee, and insurance was carried on the building, in accordance with the terms of the lease, but the policies were never deposited with the trustee. There has never been any default by the lessee in the payment of rentals, or of any taxes or other charges against the property.

On the 11th day of October, 1923, the building on the lot was so damaged by fire that the appellee collected from the insurance companies having policies thereon the sum of $57,057.00. The lessee thereupon sought and procured a conference with appellants, Stuart McKnight, Mrs. Bowmer, and Mrs. Miller, who, with their brother, Henry McKnight, became the owners of the property upon the death of their mother and father, under the will of the latter. At the conference held in the Brown Hotel, on

October 26, 1923, the lessee was represented by its president, Mr. Brown, and its attorney, Mr. Forcht. Mr. Brown stated that he had called the meeting to see if there could be an agreement arranged whereby it would not be necessary to restore the building to its former state, explaining that it seemed to appellee to be a foolish waste of money to restore the temporary building to a condition "equal in value, size, character and height," as provided in the lease, when the building would have to be torn down on January 1, 1929, at the latest, and that he proposed, if his plans materialized, to begin the construction of the permanent building on January 1, 1926. For this reason he sought permission to make less expensive repairs, which would protect the first-floor tenants, and leave the second floor unoccupied. He also asked permission to withdraw the $50,000.00 of securities and to substitute a $400,000.00 bond therefor. The latter proposition was declined by the three appellants, but that they agreed that the second floor need not be restored, and that the building might be repaired as proposed by Mr. Brown, if the building inspector of Louisville would agree thereto, is made certain by the fact that in their answer, counterclaim and cross-petition filed herein, they asserted that "they agreed for themselves only," and that they had no power to represent or bind their brother, Henry McKnight.

Appellee then had plans and specifications prepared for restoring the temporary building, in accordance with this agreement, and after same had been approved by the building inspector of Louisville, let the contract, and same was nearing completion when, on November 26th, 1923, Mrs. Bowmer made complaint that appellee had violated the terms of its lease by failing to deposit the insurance policies with the trust company prior to the fire, and demanded payment to it of the $57,057.00 of insurance collected by appellee. The next day appellee delivered to Stuart McKnight for deposit with the trust company all insurance policies on the property, but it did not turn over the $57,057.00 of insurance it had collected, at which time Stuart McKnight assured appellee's attorney that so far as he knew this would be satisfactory.

A few days later Mrs. Bowmer again demanded that the insurance policies and money be turned over to the trust company, whereupon appellee requested another conference. The reply to its letter making this request was the institution of a forcible detainer proceed-

ing in Judge Tincher's court. The trial there having resulted in a peremptory instruction to find appellee not guilty, an appeal was taken by appellants to the circuit court, where the case was submitted to a jury, upon the evidence, and it also found appellee not guilty. Appellants filed a motion for a new trial. Thereupon appellee filed this action in equity to enjoin appellants from further prosecuting the forcible detainer proceedings, or claiming a forfeiture of the lease and the $50,000.00 of securities, and requiring them to present all their claims with reference thereto in this action.

This was on May 2, 1924, and there then remained to appellee less than four months of the twelve months in which it had to restore the buildings to their former state, if the terms of the lease rather than the agreement with three of appellants were to control. A temporary restraining order was granted, but at the expiration of the twelve months in which, according to the lease, appellee had to restore the building to its former state, appellants filed an action at law seeking a forfeiture of the $50,000.00 of securities in the hands of the trustee. The chancellor required them to set up that claim in this action, which they did by an answer, counterclaim and cross-petition.

The issues having been completed, the case was submitted upon the evidence produced at the trial of the forcible detainer writ in the circuit court, and which discloses the facts to be as above stated, and the chancellor found appellee was not guilty of the forcible detainer, and that appellants were not entitled to insist upon a forfeiture or damages, and granted the prayer of appellee's petition. It is from that judgment this appeal is prosecuted.

We shall not attempt to answer separately the many complaints of that judgment pressed upon our attention by counsel for appellants, since all of them are based upon the single theory that the chancellor erred in refusing to declare a forfeiture of the lease and award them $50,000.00 as liquidated damages because of appellee's admitted failure to comply with the strict terms of the lease with reference to depositing insurance policies and money with the trustee, and in the restoration of the damage done to the temporary building by fire. Or, stated otherwise, that the chancellor erred in refusing to ignore the admitted fact that the failure to deposit the policies with the trustee had been acquiesced in by

appellants, their father, and their mother ever since the lease was executed in 1912, and that the failure to restore the buildings to their former state was due solely to an express agreement by three of the four joint owners of the property that it might be restored temporarily, or possibly until January 1, 1929, in a less expensive manner but in such manner as cannot possibly jeopardize in the least any benefit due appellants under the lease, or their security for the future compliance therewith by the appellee.

That this was not error seems to us too obvious to admit of serious discussion. The chief insistence for appellants, in support of their many complaints of the judgment, is that the chancellor has made a different contract for the parties from the one they themselves made, in violation of their right to contract as they please, which is clearly not true. He has simply held that a failure strictly to comply with the contract they made will not work a forfeiture, where the failure of appellee so to comply was either agreed to or acquiesced in with knowledge by appellants, and where, too, appellants have sustained and will sustain no material damage because thereof, and a forfeiture would impose great and unconscionable losses upon appellee, and correspondingly enrich them.

The chancellor's action was in exact accord with recognized principles of equity, and his power and duty so to act in such circumstances is fully authorized by the authorities, as well as by reason and good conscience. Wilson v. Jones & Tapp, 1 Bush 173; Hoge v. Forsythe, 198 Ky. 462, 248 S. W. 1008; Edwards-Pickering & Co. v. Rodes, 203 Ky. 95, 261 S. W. 885.

Judgment affirmed.